# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **IN RE: D. ERIK VON KIEL,** | : | |
| | : | |
| **D. ERIK VON KIEL,** | : | **CIVIL ACTION NO. 12-4345** |
|       **Appellant,** | : | |
| | : | |
|     **v.** | : | **BANKRUPTCY NO. 10-21364** |
| | : | |
| **DEPARTMENT OF HEALTH AND** | : | |
| **HUMAN SERVICES, and UNITED** | : | |
| **STATES DEPARTMENT OF JUSTICE,** | : | |
|       **Appellees.** | : | |

## MEMORANDUM OPINION

RUFE, J.                                                              AUGUST 7, 2013

Debtor-Appellant, D. Erik von Kiel, appeals *pro se* from the Bankruptcy Court's order

dated June 19, 2012.  Having considered fully the briefs and the record on appeal, and having

determined that oral argument is not necessary in this case,[1] the Court will affirm the order of the

Bankruptcy Court for the following reasons.

## I.  BACKGROUND

On May 6, 2010, Debtor filed a voluntary bankruptcy petition under Chapter 7 of the

United States Bankruptcy Code[2] in the Bankruptcy Court for the Eastern District of

Pennsylvania.[3]  On November 9, 2010, Debtor filed his first adversary complaint against

Appellee, the United States Department of Health and Human Services ("HHS"), seeking to

discharge his Health Education Assistance Loans ("HEAL loans").[4]  This complaint was

---

[1]  Fed. R. Bankr. P. 8012.

[2]  11 U.S.C. §§ 701-784.

[3]  Bankr. E.D. Pa. Pet. No. 10-21364, Doc. No. 1.

[4]  Bankr. E.D. Pa. Adversary Proceeding No. 10-2146, Doc. No. 1.

dismissed and then re-filed as fifteen-count complaint against, among others, Appellees HHS and the Department of Justice on February 17, 2011.[5]  Nine of the fifteen counts were dismissed, leaving Counts One through Six asserted against Appellees only; these six counts were addressed in the Bankruptcy Court's June 19, 2012 Opinion that is the subject of this appeal.  The June 19 Opinion resolved cross-motions for summary judgment and the accompanying order entered summary judgment in favor of Appellees.[6]  This timely filed appeal followed.

## II.    JURISDICTIONAL STATEMENT

Bankruptcy courts have jurisdiction to hear and determine all core proceedings under Title 11 of the United States Code.[7]  An adversary proceeding seeking to discharge a debtor's student loans under 11 U.S.C. § 523(a)(8) is a core proceeding under 28 U.S.C. § 157(b)(2)(I); therefore, the Bankruptcy Court had jurisdiction under this section to consider and decide the parties' cross-motions for summary judgment in the underlying adversary proceeding.  This Court has jurisdiction to review the Bankruptcy Court's decision pursuant to 28 U.S.C. § 158(a).[8]

## III.   STANDARD OF REVIEW

A district court reviews a bankruptcy court's "order granting summary judgment *de novo*."[9]  "Factual findings are reviewed for clear error."[10]  "A bankruptcy court may grant summary judgment in an adversary proceeding . . . [if the movant] show[s] that there is no

---

[5]  Bankr. E.D. Pa. Adversary Proceeding No. 11-2022, Doc. No. 1.

[6]  Bankr. E.D. Pa. Adversary Proceeding No. 11-2022, Doc. Nos. 113, 114.

[7]  28 U.S.C. §§ 157(b)(1) and (b)(2).

[8]  In re Michael, 699 F.3d 305, 308 n.2 (3d Cir. 2012).

[9]  In re Harvard Indus. Inc., 568 F.3d 444, 449-50 (3d Cir. 2009).

[10]  Id.

genuine [dispute] as to any material fact and [the movant] is entitled to judgment as a matter of law."[11]

## IV.    STATEMENT OF FACTS

Deferring to the Bankruptcy Court's credibility determinations, this Court has reviewed the Bankruptcy Court's factual findings for clear error and finds none. The following facts are taken from the Bankruptcy Court's June 19, 2012 Opinion granting summary judgment in favor of Appellees. Since the Court writes primarily for the parties who are familiar with the facts at issue, the Court recounts herein only those facts necessary to give context to its decision.[12]

Debtor attended medical school in the 1980s, and financed his education using HEAL loans, insured by the United States Government under the Public Health Service Act.[13] Debtor borrowed money from the First Eastern Bank and First American Bank, N.A., debts that were later purchased by the Student Loan Marketing Association (Sallie Mae, Inc.) (Claim I), and from the Pennsylvania Higher Education Assistance Agency ("PHEAA") (Claim II). Upon completion of medical school and related internships, Debtor began making payments on both groups of loans in May 1989, and he continued to do so until 1998.

When Debtor stopped making payments, both PHEAA and Sallie Mae declared Debtor in default and each filed a complaint against him in the Lehigh County Court of Common Pleas. As a result, two civil judgments totaling about $187,000, were entered against Debtor on August 3, 1999 and November 20, 2000. The judgments were registered under Debtor's alias, D.O.

---

[11] In re Atamian, 300 F. App'x 175, 176-77 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056) (alterations reflect new summary judgment language).

[12] See In re Myers, 491 F.3d 120, 126 (3d Cir. 2007) ("The Bankruptcy Court is best positioned to assess the facts, particularly those related to credibility and purpose.").

[13] 42 U.S.C. §292f-p.

Dennis W. Fluck, in the United States District Court for the Eastern District of Pennsylvania on September 19, 2002.[14] The United States began collection efforts in 2006, applying for and obtaining writs of garnishment from Debtor's employer. By Order dated April 23, 2010, the Honorable Petrese B. Tucker of this Court ordered Debtor's employer to pay 25% of Debtor's net earnings to the United States.[15] Less than two weeks later, Debtor filed his Bankruptcy Petition.[16]

On October 13, 2010, the United States Trustee timely filed a complaint in the Bankruptcy Court (docketed as a separate adversary proceeding), objecting to Debtor's discharge on three independent statutory grounds.[17] In its January 5, 2012 Opinion denying debtor's discharge in this separate adversary proceeding, the Bankruptcy Court found that Debtor's bankruptcy petition "constitute[d] Debtor's ill-concealed and back-door attempt to avoid Judge Tucker's decision," and the reach of his creditors in general.[18] The Bankruptcy Court entered judgment in favor of the United States Trustee and Appellees thereafter filed a motion for summary judgment in the related adversary proceeding at issue in this appeal.[19] Debtor responded by filing a cross-filed a motion for summary judgment.[20] The Bankruptcy Court entered summary judgment in favor of Appellees on all six counts.

---

[14] Misc. No. 02-234, Doc. No. 1 (Hon. Petrese B. Tucker, presiding).

[15] Misc. No. 02-234, Doc. No. 22.

[16] Bankr. E.D. Pa. Pet. No. 10-21364, Doc. No. 1.

[17] Bankr. E.D. Pa. Adversary Proceeding No. 10-2136, Doc. No. 1.

[18] Bankr. No. 10-2136, Doc. No. 33 at 5.

[19] Bankr. No. 11-2022, Doc. No. 93.

[20] Bankr. No. 11-2022, Doc. No. 100.

Of relevance to the Bankruptcy Court's decision is Debtor's earlier, related bankruptcy proceeding. On September 9, 1991, Debtor and his wife filed a Chapter 7 bankruptcy petition also in the United States Bankruptcy Court for the Eastern District of Pennsylvania.[21] Debtor was granted a discharge by order entered February 18, 1993.[22] Debtor did not file any adversary complaints with regard to this proceeding.[23]

Also of relevance to this appeal, is a related appeal of the Bankruptcy Court's January 5, 2012 general denial of discharge. As stated, on January 5, 2012, the Bankruptcy Court denied Debtor's discharge based on its finding that "Debtor is engaged in a fraudulent scheme to evade taxes and frustrate his creditors."[24] Debtor appealed the decision to this Court.[25] This Court affirmed the denial of discharge, finding that there was ample support in the record for the Bankruptcy Court's finding that Debtor fraudulently concealed his assets.[26] In reaching this decision, the Court wrote:

> Here, the record clearly supports the Bankruptcy Court's finding that Debtor concealed property belonging to, or at the very least controlled by him with the intent to hinder his creditors. Despite his income of more than $150,000, his receipt of W-2s, his control over the TLM account to which most of the $150,000 income was transferred, and the fact that this income, or an equivalent sum of money, was used to pay Debtor's personal and family expenses, Debtor maintained that he has little to no income or assets. Debtor's claimed that the income he earned from PrimeCare was not his property is belied by his actions, which show attempts to conceal income and assets, and to move his property beyond the reach of his creditors.

---

[21] Bankr. E.D. Pa. Pet. No. 91-23203, Doc. No. 1.

[22] Bankr. No. 91-23203, Doc. No. 34.

[23] See generally Bankr. No. 91-23203.

[24] Bankr. No. 10-2136, Doc. No. 33 at 15.

[25] Civ. A. No. 12-972, Doc. No. 1.

[26] Civ. A. No. 12-972, Doc. No. 16.

The Court notes factual evidence of a close relationship between Debtor and IAL and the Debtor and TLM, the use of a second social security number, Debtor's arranging for his income to be passed through more than one account though ultimately the funds were used by Debtor, Debtor's attempt to transfer the home he owned jointly with his estranged wife to her sole ownership, Debtor's attempt to disclaim knowledge of his financial affairs by using a power of attorney and failing to keep records of his transactions, and Debtor's receipt and use of $13,000 in "gift" money from IAL every month to pay personal and family expenses. The Bankruptcy Court did not find Debtor and his "ignorance" credible and this Court defers to this credibility determination, which is supported by other facts of record.[27]

## V.    DEBTOR'S APPEAL

Debtor challenges the entirety of the Bankruptcy Court's findings that supported the entry of summary judgment in Appellee's favor.[28]  He argues that: (1) the Bankruptcy Court erred in holding that Debtor's  HEAL Loans were not discharged in his 1991 bankruptcy case; (2) the Bankruptcy Court erred in holding that the Rooker-Feldman Doctrine and Claim Preclusion prohibited it from exercising jurisdiction over certain claims; (3) the Bankruptcy Court erred in finding that that the general denial of discharge in Debtor's bankruptcy proceedings rendered certain claims moot; (4) the Bankruptcy Court erred in prohibiting Robert MacWray from representing, counseling, or assisting Debtor in the proceedings; and (5) Debtor's right to a jury trial was violated.

### A.    Count 4

Count 4 of the underlying adversary complaint, labeled "Loan Discharged in Bankruptcy Already," alleges that the HEAL loans were discharged in Debtor's 1991 bankruptcy case.  The Bankruptcy Court found that the HEAL loans were not discharged in the 1991 case and granted

---

[27] Id. at 11-12.

[28] The Court liberally construes Debtor's *pro se* filings and in doing so, interprets these filings as raising five issues on appeal.  The first three are interpreted as general objections to the Bankruptcy Court's ruling regarding the substance of the claims at issue in the summary judgment motions (Counts 1-6 of the adversary complaint), and are grouped in the same way they were grouped by the Bankruptcy Court.  The last two issues are more specific objections, which Debtor raises with regard to the underlying proceedings and are addressed separately.

summary judgment in favor of Appellee on this count.  The Bankruptcy Court's finding was not in error.

At the time of Debtor's discharge, HEAL loans were automatically excepted from discharge unless a debtor filed an adversary complaint requesting that the loans be discharged, and established, *inter alia*, "that the nondischarge of such debt would be unconscionable."[29] Debtor did not file an adversary complaint seeking discharge of his HEAL loans in the 1991 Bankruptcy proceedings.[30]  Thus, these loans were not discharged in Debtor's 1991 proceedings, and the Bankruptcy Court was correct in finding that Appellees were entitled to summary judgment in their favor on Count 4.

### B.    Counts 1, 2, 3, and 6

In Counts 1, 2, 3, and 6 of his underlying adversary complaint, Debtor argues that the state court judgments entered against him in the Lehigh County Court of Common Pleas are void because the HEAL loans were discharged in the 1991 Bankruptcy case.  The Bankruptcy Court found that the Rooker-Feldman Doctrine[31] and the doctrine of claim

---

[29] 42 U.S.C. § 294f(g)(2) (now renumbered as 42 U.S.C. § 292f(g)(2)); United States v. Rushing, 287 B.R. 343, 351 (D.N.J. 2002).

[30] See generally Bankr.  No. 91-23203.

[31] The Rooker-Feldman Doctrine, "which takes its name from two Supreme Court cases, generally withholds jurisdiction of federal courts (save the United States Supreme Court) over state judgments, as they are more appropriately appealed within the state judiciary." Ellington v. Cortes, No. 13-1528, 2013 WL 3822161, at *2 - 3 (3d Cir. July 25, 2013) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923)).  The Doctrine applies when four requirements are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."  Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  The August 3, 1999 and November 20, 2000, Leigh County judgments were entered *against* Debtor, *before* Debtor's bankruptcy petition was filed, and in the underlying adversary complaint, Debtor *claims injury* arising out of these judgments and asks that they be *declared void*.  Therefore, the claims in Counts 1, 2, 3, and 6 meet all four requirements and the Bankruptcy Court was correct in concluding that the doctrine barred Debtor's claims.

preclusion[32] barred Debtor's challenge to the state court judgments, and that Debtor's argument that the "Dabrowski exception"[33] applied failed because it was based on the mistaken assumption that the HEAL loans were discharged in the 1991 bankruptcy proceeding.

In his appeal, Debtor challenges the Bankruptcy Court's rejection of the Dabrowski exception to Rooker-Feldman and other preclusionary rules. Dabrowski held that Rooker-Feldman does not apply to state court judgments that are void because of a bankruptcy discharge.[34] Debtor argues that the 1991 discharge of his HEAL loans renders the state court judgments void and thus, his claims are not barred by Rooker-Feldman. However, because, as stated above, Debtor's HEAL loans were not discharged in the 1991 bankruptcy case, the state court judgments are not void by virtue of this discharge and the Bankruptcy Court correctly concluded that Counts 1, 2, 3, and 6 are barred by Rooker-Feldman.

---

[32] "Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit. A party seeking to invoke res judicata must establish three elements: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." Duhaney v. Att'y Gen. of U.S., 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks and citiations omitted). The Bankruptcy Court held that Counts 1, 2, 3, and 6 "seek to litigate claims that could have been raised in the underlying state court actions," "involve the same parties or their privies and the same causes of action that were involved in the underlying state court actions," and the final judgments that were entered in those cases were entered "by courts of competent jurisdiction." Bankr. No. 11-2022, Doc. No. 114 at 17. Because the Court finds that the Rooker-Feldman Doctrine bars the claims at issue, whether the Bankruptcy Court's conclusion on this point was in error is of no moment, particularly because Debtor does not appear to challenge the court's conclusion in this regard.

[33] In re Dabrowski, 257 B.R. 394 (Bankr. S.D.N.Y. 2001).

[34] Id. at 406.

**C.** **Count 5**[35]

Count 5 of the adversary complaint sought a determination that Debtor's HEAL loans are dischargeable in bankruptcy under 42 U.S.C. §292f(g). The Bankruptcy Court held that Appellees were entitled to summary judgment on this claim, finding that "[w]hen a general discharge is denied under Section 727," as it was here by virtue of the January 5, 2012 Opinion, "issues regarding exceptions to discharge of specific debts under Section 523 or 42 U.S.C. § 292f(g) become moot."[36]

Title 42, United States Code, section 292f(g) provides that HEAL loans may be discharged in bankruptcy if a debtor establishes, *inter alia*, that "nondischarge of [the] debt would be unconscionable."[37] Since, by opinion and order dated January 5, 2012, the Bankruptcy Court denied discharge generally, it follows that discharge of specific debts pursuant to § 292f(g) would not be warranted. Additionally, the Courts notes that given the findings of the Bankruptcy Court, which were affirmed on appeal by this Court in a related proceeding,[38] there is no basis for a finding that discharge of Debtor's HEAL loans is warranted under § 292f(g).

**D.** **The Appearance of Robert MacWray in the Bankruptcy Proceedings**

Debtor asserts that the Bankruptcy Court violated his constitutional rights by prohibiting Robert MacWray from appearing on Debtor's behalf in the bankruptcy proceedings. The Bankruptcy Court did not err in prohibiting Mr. MacWray from attempting to act as Debtor's

---

[35] The Court is unable to discern Debtor's specific objection with regard to this Count. Consequently, the Court considers the substance of the claim and the Bankruptcy Court's conclusion in this regard.

[36] Bankr. No. 11-2022, Doc. No. 114 at 21.

[37] 42 U.S.C. § 292f(g)(2).

[38] Civ. A. No. 12-972, Doc. No. 16.

attorney in the proceedings as Mr. MacWray is not a licensed attorney authorized to practice law in Pennsylvania.

### E. Denial of Demand for a Jury Trial

Debtor argues that the Bankruptcy Court deprived him of his constitutional right to a jury trial by granting Appellees' motion for summary judgment without acknowledging his jury demand.[39] "As the Supreme Court held, over one hundred years ago, a summary judgment proceeding does not deprive the losing party of its Seventh Amendment right to a jury trial."[40]

## VI. CONCLUSION

For the foregoing reasons, the Court finds that Debtor's appeal lacks merit. Accordingly, the Court will affirm the June 19, 2012 Order of the Bankruptcy Court.

An appropriate Order follows.

---

[39] See Debtor's Initial Brief [Doc. No. 4] at 4. In his brief, Debtor writes: "These issues included satisfying the plaintiff's concern of confliction of interest including financial gain of defendant (US government entity) and the fact that the judge is also a government employee (defendant/defendant attorney, the judge and the US trustee attorney all our federal employees/entities against a pro se litigant and also financially it is the judge's employer who gains or loses financially if defendant versus the plaintiff wins the case." Id. (quoted as in original). To the extent Debtor is asserting a conflict of interest in these proceedings because Appellees and the Court are both "federal employees/entities," the Court refers to its May 22, 2013 Order denying his Motion to Recuse. Doc. No. 12.

[40] Conklin v. Anthou, 495 F. App'x 257, 261 (3d Cir. 2012) (quoting Santa Barbara Capital Mgmt. v. Neilson, 525 F.3d 805, 811 (9th Cir. 2008) (citing Fid. & Deposit Co. of Md. v. United States, 187 U.S. 315, 319–21 (1902)); see also Novak v. Posten Taxi Inc., 386 F. App'x 276, 279 (3d Cir. 2010) (quoting In re TMI Litig., 193 F.3d 613, 725 (3d Cir. 1999)) ("We reject Novak's argument that he was denied his right to a trial, as summary judgment does not violate the Seventh Amendment right to a jury trial 'so long as the person having the right to the jury trial is an actual participant in the summary judgment proceeding.'").